OPINION OF THE COURT
Florence M. Kelley, J.
The defendant has been indicted for promoting prostitution in the third degree and has moved to controvert a search *214 warrant and to suppress physical evidence. A hearing was held before me.
FINDINGS OF FACT
In the early evening of May 24, 1979 Detective Karen Krizan, an undercover officer in the Manhattan South Public Morals District, met with a back-up team of officers and discussed the execution of a search warrant and the arrest of the defendant, Doris King. The search warrant was a "knock and announce” warrant. It authorized the search of a bedside table within the bedroom of the defendant’s residence, apartment 10E, 201 East 83rd Street, for prostitution records and money. It also authorized a search of the defendant. At this meeting, Detective Krizan was outfitted with a "Nagra” recorder.
Shortly after 8:00 p.m. the detective went to the defendant’s building posing as a prostitute. She called the defendant on the intercom and was ultimately admitted to apartment 10E. Shortly after she entered, the back-up team arrived at the building. One officer stayed with the doorman so that he could not alert the defendant. The others went upstairs and positioned themselves at the sides of the door to apartment 10E.
Inside the apartment Detective Krizan and the defendant had gone into the bedroom and had a conversation which was recorded by the detective. Detective Krizan gave the defendant a marked $20 bill as payment for a $10 fee for making arrangements relevant to prostitution activities. The defendant could not make change. She put a trenchcoat on over her undergarments and she and Detective Krizan started to leave the apartment together to get change. At this point the detective had been in the apartment for 15 minutes.
When the defendant opened the door to leave, Police Officer Di Capua, to whom the warrant was addressed, stepped in front of her and announced that he was a police officer. He showed her the search warrant and told her that she was under arrest. At this point the defendant had just stepped beyond the threshold and the door to the apartment had not yet closed behind her. She was not given an opportunity to read the warrant until after the officers took her back into the apartment and she was seated on the living room sofa.
Back inside the apartment Detective Krizan searched the defendant and recovered the marked $20 bill. Police Officer Di *215 Capua and Sergeant Trapp went into the bedroom and searched the bedside table from which they recovered numerous records.
After the search was completed Detective Krizan took the defendant into the bedroom and allowed her to change her clothing in order to go to the precinct. The defendant got a coat out of the hall closet near the front door. While doing so she knocked over a brown grocery bag which spilled out credit cards and other records onto the floor. Police Officer Di Capua seized these items because he thought they did not belong to the defendant.
The officers borrowed a red suitcase from the defendant and used it to carry the evidence out of the apartment. In addition to the records they also took three telephones.
ISSUES
The defendant contends that the officers exceeded the scope of the warrant and that they failed to give notice of their authority and purpose before entering the apartment.
CONCLUSIONS OF LAW
The first issue is essentially one of credibility. The prosecution witnesses testified that they searched only the bedside table and that any other property that was seized was first seen in open view. The defendant testified that the officers searched a locked closet in her bedroom and seized the papers that constitute People’s 5 in evidence therefrom. I find that People’s 5 was seen in open view in the hall closet when the defendant went to get her coat and knocked it over spilling its contents onto the floor. I further find that it was properly seized because the names on the credit cards were not the defendant’s.
The second question is less simple to resolve. Did Detective Krizan’s entry into the apartment in an undercover capacity or the subsequent entry of the back-up team violate the provisions of CPL 690.45 and 690.50 which require police officers who are executing a search warrant to make a reasonable effort to give notice of their authority and purpose before entering?
It is clear from the testimony of the People’s witnesses that their purpose in going to the defendant’s apartment on the *216 evening in question was to execute the warrant and make an arrest.
There appears to be no reported case law in this jurisdiction which addresses itself directly to the question of whether Detective Krizan’s entry violated the notice provision. It has been held by the Appellate Term, First Department, in People v Rodriguez (38 Misc 2d 949) that entry without force did not violate similar provisions under the Code of Criminal Procedure. It was pointed out in that decision however that neither trickery nor deceit had been used to gain entry. Similarly in People v Di Bernardo (89 Misc 2d 931), it was held that strict compliance is required where entry is gained by force, but in the absence of force, a mere technical entry need merely comply substantially with the statute.
The court finds persuasive recent decisions from the State of Pennsylvania and the United States Circuit Court of Appeals, Florida, which stand for the proposition that the use of ruse, deception or subterfuge, in the absence of force, to gain entry in order to execute a search warrant is permissible. (Commonwealth v Regan, 386 A2d 89 [Pa]; United States v DeFeis, 530 F2d 14, cert den 429 US 830.)
In United States v DeFeis (supra) an undercover officer and a confidential informant gained entry to an apartment posing as narcotics purchasers. A surveillance team waited outside. The confidential informant left the apartment on the pretext of getting the purchase money. A short time later he knocked on the door and when the defendant opened it the back-up team rushed through the door and announced their authority. Although the officers did not have a search warrant, the court held that the provisions of section 3109 of title 18 of the United States Code, which are similar to the "knock and announce” provisions of CPL 690.50, would have been violated only if force, rather than ruse or deception, had been used to effect an entry into the apartment. (See, also, United States v Beale, 445 F2d 977, 978; Smith v United States, 357 F2d 486, 488.)
The defendant relies on two decisions from the District Court of Appeal for the Fourth District of Florida (State v Collier, 270 So 2d 451 and State v Yenke, 288 So 2d 531). In both those cases it was held that there was a valid invitation to the undercover officer to enter the premises, but the subsequent uninvited entry of the back-up team violated the Florida "knock and announce” statute (Fla Stat Ann, § 933.09).
*217 In the case at hand, I find that the back-up team did give reasonable notice of their purpose and authority before entering the defendant’s apartment and that no force was involved in their entry.
The defendant’s motion is therefore denied in all respects.